UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM A. BORDERS, Jr., <br> 28 50TH Street, NE <br> Washington, DC 20019 <br><br> Petitioner, <br><br> Vs. <br><br> DISTRICT OF COLUMBIA COURT <br> OF APPEALS <br> Serve:  Bar Counsel <br>          515 5th Street N.W. <br>          Building A <br>          Washington, D.C. 20001 <br><br><br> Respondent, | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> Civil Action No.: 14-627 |

**PETITION FOR DECLARATORY JUDGMENT
OR, IN THE ALTERNATIVE, WRIT OF MANDAMUS**

Comes now, Petitioner, William Borders, Jr., by and through undersigned counsel and Petitions this Honorable Court for Declaratory Judgment or, in the alternative, for a Writ of Mandamus against the District of Columbia Court of Appeals and the Office of Bar Counsel for the District of Columbia and as reasons States as follows;

**Introduction and Background**

In March 1982, Borders, was convicted in Federal Court of: conspiracy to bribe a United States District Court Judge (18 U.S.C. § 371): obstruction of justice (18 U.S.C. §§ 2, 1503); and two counts of traveling in interstate commerce with intent to commit

1

bribery (18 U.S.C. § 1952).  *See United States v. Borders,* 693 F.2d 1318 (11th Cir. 1982), *cert. denied,* 461 U.S. 905 (1983).[1]

On August 31, 1983, Borders, was summarily disbarred pursuant to "… D.C. Code § 11-2503(a) based on the record of his convictions, rather than following a full evidentiary hearing.  There was a finding that at least two of the convicted offenses involved moral turpitude.   At the summary hearing, no evidence other then the convictions was submitted.  Thus the record of the disbarment proceedings is devoid of any evidence of wrongdoing other than the record of convictions.

In 1993, Borders filed a petition for reinstatement with the D.C. Board on Professional Responsibility.  Said Petition was denied, and the D.C. Court of Appeals affirmed the denial.  *See In re Borders,* 665 A.2d 1381, 1385 (D.C. 1995).  In 1998, Borders filed a second petition for reinstatement with the Board on Professional Responsibility which was also denied.

On January 20, 2001, President Clinton issued a full and unconditional Pardon to Borders.  Upon receipt of the Pardon, Borders filed a motion in the D.C. Court of Appeals to vacate its original order of disbarment, on the grounds that the Presidential Pardon automatically nullified the disbarment since the Federal convictions on which the disbarment was solely based was without any findings of facts.  The District of Columbia Court of Appeals denied the motion.  That Court reasoned that the relevant statute, D.C. Code § 11-2503(a), permitted but did not require, the Court to order reinstatement.  The Court relied heavily on its prior decision in *In re Abrams,* 689 A. 2d 6 (DC 1997) (*en*

---

[1] The United States Judge involved was Alcee Hastings.  Although Borders was charged in a conspiracy naming Judge Hastings as the only co-conspirator, Judge Hastings was tried separately after Borders and a jury found him not guilty of all offenses. *United States v. Hastings,* Crim. No. 81-596-CR-ETG (S.D. Fla.).  Subsequent to the incident, Hastings became a member of the United States Congress where his current tender exceeds 20 years.

2

*banc)*, in which it held, by a 5-4 margin that reinstatement was not Constitutionally required where the original disbarment rested on independent findings about the petitioner's underlying conduct. Clearly, in this case there were no independent findings of any wrongdoing. The Court indicated that Borders could again petition for reinstatement with the Board of Professional Responsibility.

Borders then filed a petition for rehearing *en banc*. By a vote of 4-3, with two of the Court's nine members recusing themselves the Court denied the petition. Borders then filed a petition for writ of certiorari to the United States Supreme Court which was ultimately denied.

On June 11, 2008, Borders filed a Motion to Vacate Order of Disbarment Pursuant to D.C. Code § 11-2503 following Presidential Pardon and to Re-establish the *Status Quo Ante*. Borders requested that the Court vacate the order of disbarment issued on August 31, 1983. Said Motion was denied. Borders filed a request for a rehearing that was denied as well.

**Legal Argument**

**Declaratory Judgment**

Federal Courts have subject-matter jurisdiction over suits seeking declaratory and injunctive relief. *See Trudeau v. FTC*, 372 U.S. App. D.C. 335, 456 F.3d 178, 186 (D.C. Cir. 2006); *Chamber of Commerce v. Reich*, 316 U.S. App. D.C. 61, 74 F.3d 1322, 1328 (D.C. Cir. 1996). It is undisputed that suits for declaratory or injunctive relief must present a live controversy justifiable under Article III of the United States Constitution *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.--, 127 S. Ct. 764, 771, 166 L. Ed. 2d 604 (2007) (declaratory judgment); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103

S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (injunctive relief). An actual, justifiable controversy must exist not just at the moment that the suit is initiated, but also at the time that the party's entitlement to the requested relief is decided. See *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S. Ct. 956, 22 L. Ed. 2d 113 (1969). In the instant case it is very clear that the Petitioner's ability to practice law continues to be hampered by the District of Columbia Court of Appeals unwillingness to decide this matter judicially on its merit but instead resolving this matter utilizing their Administrative functions.

It is further settled in this regard that a past injury, without more, cannot form the basis for either injunctive or declaratory relief. See *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); *Haase v. Sessions,* 266 U.S. App. D.C. 325, 835 F.2d 902, 911 (D.C. Cir. 1987) (equating case-or-controversy requirement for declaratory judgment with one applicable to request for injunctive relief); see also *Green v. Mansour*, 474 U.S. 64, 74, 106 S. Ct. 423, 88 L. Ed. 2d 371 (1985) (rejecting the view that "declaratory judgments expressly adjudicating the question of past violations are routinely available"). Hence, to obtain declaratory or injunctive "relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). The D.C. Circuit has further clarified that a party pursuing an injunction or a declaratory judgment "must allege a likelihood of future violations of their rights by [the defendant], not simply future effects from past violations." *Fair

*Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 307 U.S. App. D.C. 401, 28 F.3d 1268, 1273 (D.C. Cir. 1994).  Since receiving the Presidential Pardon in 2001, the District of Columbia Court of Appeals has continued to refuse to reinstate Petitioner Status Quo Ante as the law requires.  Hence, the Petitioner continues to be denied the ability to practice law in the District of Columbia.  However, more importantly is the fact that the District of Columbia Court of Appeals has chosen to ignore the effect of a Presidential Pardon, the Constitution of the United States, and Stare Decisis by not reinstating Petitioner..

## Writ of Mandamus

The common law writ of mandamus against a lower court is codified at 28 U.S.C.§ 1651(a) [28 U.S.C.S.§ 1651(a)]: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usage and principles of law." This is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Cheney v. United States District Court,* 542 U.S. 367, 380, 124 S. Ct 2576, 159 L. Ed. 2d 459 (2004).

Writ of mandamus are governed by two statutes.  The first, more general statute, is the All Writs Act, 28 § 1651.  The second statute is 28 § 1361.

The All Writs Act, 28 § 1651 states:

> "The Supreme Court and all courts established by Act of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

Congress has also conferred jurisdiction on the District Courts to consider writs of mandamus in 28 U.S.C. § 1361 which states:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'

Usually, the All Writs Act is most commonly invoked by a Federal Circuit Court of Appeals to issue a writ of mandamus to a District Court judge; or, by the Supreme Court to issue a writ to a lower court judge. See Allied *Chemical Corp. v. Dalfon, Inc.*, 449 U.S. 33, 101 S.Ct. 188, 66 L. Ed 2d. 193 (1980); *United States v. Choi*, 818 F. Supp 2d 79, 87 (DCDC 2011). The All Writs Act has been used to compel an inferior court to exercise its authority when it has a duty and obligation to do so. It is clear that the District of Columbia Court of Appeals is an inferior court. The D.C. Court of Appeals is granted by congressional statute the power of direct appellate review. "…As a court created by Congress, the D. C. Court of Appeals is a court of limited jurisdiction; further, that limited jurisdiction carries with it a presumption of no jurisdiction in the absence of an express grant. This is of course true." *Morrow v. District of Columbia*, 411 F.2d 728, 734 (D.C. 1969).

It is well settled that the issuance of a writ of mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S. Ct. 2119, 2123, 48 L. Ed. 2d 725 (1976); *Cheney v. United States District Court,* 542 U.S. 367, 380, 124 S. Ct 2576, 159 L. Ed. 2d 459 (2004). "Only exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of this extraordinary remedy *id*. (Quotations and internal citations omitted). In order to establish a right to this rare form of relief, a petitioner must show: (1) that he has no other adequate means to attain the relief he desires, in order to prevent use of the writ as an end run around the normal

6

appeals process, *id.* at 380-81; ( 2) that the right to issuance of the writ is clear and indisputable, *id* at 381; and, (3) that the lower court has a clear duty to act.  Furthermore, even if the petitioner is able to satisfy the above criteria, the Court must still avail itself that, in the exercise of its discretion …the writ is appropriate under the circumstances." *United States v. Choi,* 818 F. Supp 2d 79, 87 (DCDC 2011) quoting *Cheney v United States District Court,* 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed. 459 (2004).

In the instant case there is no other adequate means to attain the relief Petitioner desires. The Petitioner's complaint is that the Constitution of the United States of America and the United States Supreme Court respect the Presidential Pardon; however, the District of Columbia Court of Appeals has elected to avoid the Constitutional issue by circumventing the Question and requesting that Petitioner resubmit his application to the bar.  The instant issue is not whether Petitioner should be reinstated, but rather, the effect of a Presidential Pardon.  Clearly, if this issue did not involve a Constitutional Question or if the District of Columbia Court of Appeals had addressed that question, the Petitioner would have an adequate means to appeal.  However, in the instant matter the District of Columbia Court of Appeals decided to respond to this case in its Administrative capacity instead of its judicial capacity.  By responding as it did, the D.C. Court of Appeals has disregarded *Stare Decisis* in effect: (1) reversing the ruling of *Ex parte Garland,* 71 U.S. (4Wall.) 333(1866); reversing and minimizing the Presidential Pardon which is the only right of the President of the United States that is unreviewable by any Court; and, in effect, giving no credence to Article II Section 2 of the United States Constitution by disregarding the Pardon Clause.   Not only did the D.C. Court of Appeals ignore *Ex parte Garland* but they also ignored the teachings of Alphonso J. Jennings, who was an

7

attorney that became an outlaw.  Jennings was convicted and given a life sentence.  Jennings received a Presidential pardon in 1907 and was allowed to practice law again.  Clearly, the D.C. Court of Appeals has committed an ultra virus act that must be corrected by the Federal Court.  Therefore the only remedy available to the Petitioner is the instant filing.[2]

**WHEREFORE,** the foregoing premises considered it is prayed that the Court grant this petition for Declaratory Judgment or, in the alternative grant the Writ of Mandamus.

### Hearing

The Petitioner requests a hearing as to all issues.

Respectfully submitted,

**Antoini M. Jones #428159**
Gibson, Jones & Associates
1401 Mercantile Lane
Suite 381
Riverdale, Maryland 20774
(301) 277-0770
amjoneslaw@gmail.com
**Attorney for Petitioner**

---

[2] Note that there are over ten thousand individuals who have signed a Petition agreeing with Petitioner.  The attachment exceeds the page allotment.  It will be forwarded upon request.

PETITION OF CONCERNED INDIVIDUALS FOR JUSTICE

We the undersigned petitioners respectfully request that you reinstate, William A. Borders, Jr. to the practice of law in the District of Columbia, for the following reasons:

1. Mr. Borders was disbarred without a hearing (August 31, 1983) after convictions in the Federal Court with a Certified copy. Said convictions and the Certified copy later nullified by President William Jefferson Clinton's full and unconditional pardon.[1]
2. The Supreme Court of the United States in Ex parte Garland[2] ruled that an individual who receives a full and unconditional pardon should be granted all previous rights; and, indicated in that case Garland should be reinstated to the practice of law in the District of Columbia. The Court further state that all penalties should be nullified.
3. In another District of Columbia case, Wilbur Sewell[3] was disbarred for a Federal conviction in the District of Columbia and later reinstated after being granted a full and unconditional pardon.[4]
4. In the case of Elliott Abrams[5] in which your office attempted to disbar him for a Federal conviction prior to a Presidential pardon. During the disbarment proceedings the President of the United States granted him a full and unconditional pardon. That pardon negated disbarment. Mr. Abrams later received the highest United States security clearance.
5. Article II, Section 2. of the Constitution of the United States authorizes the President "to grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment" (the "Pardon Clause"). Based on that language, no inferior body within the United States can overrule the Pardon Clause of the Constitution. This means that no institution or legislative body can challenge or not honor the full and unconditional pardon in the District of Columbia or elsewhere. Mr. Borders does not fall within the exception in the Pardon Clause.

6. Since the Executive Office (then sitting President William Jefferson Clinton), the Supreme Court (Ex parte Garland) and the Constitution (Pardon Clause) state affirmatively that Mr. Borders, with a full and unconditional pardon, should be restored to his position prior to the disbarment i.e., a member in good standing of the District of Columbia Bar.
7. Based on principals of fundamental fairness, judicial precedent, legislation and the Executive Office pardon, your office should reinstate William A. Borders, Jr.
8. We respectfully state that to not reinstate is double jeopardy under the law and denies him a right to make a living, imposes undue harm on his livelihood and denies him the equal protection of the law.
9. In a related matter, President Andrew Johnson granted a full and unconditional pardon to Roger Mudds' grandfather who was convicted and sentenced to life for his part in the assassination of President Abraham Lincoln. Upon receiving a full and unconditional pardon he was reinstated to the practice of medicine.
10. We make the observation that Garland was appointed United States Attorney General

by President Grover Cleveland twenty years after President Andrew Johnson pardoned him.

[1] See attached copy

[2] Ex parte Garland, 71 U.S. (4 Wall.) 333 (1866)

[3] In re: Sewell misc. no. 36-62 (December 23, 1971)

[4] In re: Sewell (October 18, 1972)

[5] In re: Abrams, 689 A. 2d 6 (D.C. 1977)

**We the undersigned petition the D.C. Bar Association to immediately reinstate Mr. William A. Borders, Jr. to full bar membership with all rights, privileges and responsibilities pertaining thereto.**